UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| MATTHEW WALKER, | :<br>: |
| Plaintiff, | : Case No. _____<br>:<br>: |
| v. | : **COMPLAINT FOR VIOLATIONS OF**<br>: **THE FEDERAL SECURITIES LAWS**<br>: |
| SANDERSON FARMS, INC., JOHN BIERBUSSE, MIKE COCKRELL, EDITH KELLY-GREEN, SUZANNE T. MESTAYER, FRED L. BANKS, JR., TONI D. COOLEY, SONIA PEREZ, GAIL JONES PITTMAN, DAVID BARKSDALE, LAMPKIN BUTTS, BEVERLY W. HOGAN, PHIL K. LIVINGSTON, and JOE F. SANDERSON, JR., | : **JURY TRIAL DEMANDED**<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| Defendants. | :<br>: |

---

Plaintiff Matthew Walker ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This action is brought by Plaintiff against Sanderson Farms, Inc. ("Sanderson" or the "Company") and the members of Sanderson's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Sanderson will be acquired by Cargill, Incorporated ("Cargill") and Continental Grain Company ("CGC"), through their affiliates Walnut Sycamore

Holdings LLC ("Parent"), Sycamore Merger Sub LLC ("Merger Sub"), and Wayne Farms LLC ("Wayne Farms") (the "Proposed Transaction").

2. On August 9, 2021, Sanderson, Cargill, and CGC issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated August 8, 2021 (the "Merger Agreement"). Under the terms of the Merger Agreement, each Sanderson shareholder will receive $203.00 in cash for each share of Sanderson common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $4.53 billion.

3. On September 13, 2021, Sanderson filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Sanderson stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Centerview Partners LLC ("Centerview"); and (iii) Company insiders' potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as Sanderson stockholders need such information in order to make a fully informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

4. In short, unless remedied, Sanderson's public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Moreover, Sanderson's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Sanderson.

9. Defendant Sanderson is a Mississippi corporation, with its principal executive offices located at 127 Flynt Road, Laurel, Mississippi 39443. Sanderson is engaged in the production, processing, marketing and distribution of fresh, frozen and minimally prepared chicken. Sanderson's shares trade on the Nasdaq Global Select Market under the ticker symbol "SAFM."

10. Defendant John Bierbusse ("Bierbusse") has been a director of the Company since 2006.

11. Defendant Mike Cockrell ("Cockrell") has been Treasurer, Chief Financial Officer, and Chief Legal Officer of the Company since 1993, and a director since 1998.

12. Defendant Edith Kelly-Green ("Kelly-Green") has been a director of the Company since 2018.

13. Defendant Suzanne T. Mestayer ("Mestayer") has been a director of the Company since 2017.

14. Defendant Fred L. Banks, Jr. ("Banks") has been a director of the Company since 2007.

15. Defendant Toni D. Cooley ("Cooley") has been a director of the Company since 2007.

16. Defendant Sonia Pérez ("Pérez") has been a director of the Company since 2019.

17. Defendant Gail Jones Pittman ("Pittman") has been a director of the Company since 2002.

18. Defendant David Barksdale ("Barksdale") has been a director of the Company since 2018.

19. Defendant Lampkin Butts ("Butts") has been President of the Company since 2004, and a director since 1998.

20. Defendant Beverly W. Hogan ("Hogan") has been a director of the Company since 2004.

21. Defendant Phil K. Livingston ("Livingston") is Lead Independent Director and has been a director of the Company since 1989.

22. Defendant Joe F. Sanderson, Jr. ("Sanderson") has been Chairman of the Board since 1998, Chief Executive Officer ("CEO") of the Company since 1989, and a director since 1984.

23. Defendants identified in paragraphs 10-22 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

24. Cargill, a privately held company, is a global food, agriculture, financial and industrial products company headquartered in Wayzata, Minnesota, with operations in more than 70 countries.

25. CGC is a privately held, family-owned company focused on operating and value-added investing in the food and agriculture sectors.

26. Parent is a Delaware limited liability company jointly controlled by CMSC and Wayne Farms Holdings LLC, which is majority owned by CGC.

27. Merger Sub is a Delaware limited liability company and an indirect wholly owned subsidiary of Parent.

28. Wayne Farms is a Delaware limited liability company that is affiliated with CGC.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

29. Sanderson is engaged in the production, processing, marketing and distribution of fresh and frozen chicken and the preparation, processing, marketing and distribution of processed and minimally prepared chicken items. The Company sells chill-packed, ice-packed, bulk-packed and frozen chicken, in whole, cut-up and boneless form, primarily under the Sanderson Farms brand name, to retailers, distributors and casual dining operators in the United States and to

customers who resell frozen chicken into export markets.

30. On August 26, 2021, the Company announced its third quarter fiscal 2021 financial results. Net sales for the third quarter of fiscal 2021 were $1,352.8 million compared with $956.5 million for the same period a year ago. For the quarter, the Company reported net income of $164.8 million, or $7.38 per share, compared with net income of $32.8 million, or $1.48 per share, for the third quarter of fiscal 2020. Net sales for the first nine months of fiscal 2021 were $3,395.9 million compared with $2,624.2 million for the first nine months of fiscal 2020. Net income for the first nine months of fiscal 2021 totaled $271.2 million, or $12.14 per share, compared with net income of $0.35 million, or $0.02 per share, for the first nine months of fiscal 2020. Commenting on the results, defendant Sanderson stated:

> Our financial results for the third quarter of fiscal 2021 reflect significantly improved demand and prices for products sold to food service customers, continued strong demand for products sold to retail grocery store customers, reduced volumes due to planned egg set reductions that we implemented during the early stages of the COVID-19 pandemic, and higher costs of feed grains. Our results also reflect superior execution in all areas of our business, including live production, processing and sales. We benefitted from improved market conditions for the products we sell to food service customers due to the phased reopening of more food service establishments across the nation. While food service customer demand has improved with more people dining out, consumers also continue to prepare meals at home. As a result, demand for the products we sell to retail grocery store customers remained strong throughout the quarter.
>
> We produced approximately 1.21 billion pounds during the third quarter, which is 53.2 million, or 4.2 percent, fewer pounds than we would have produced at full production. This reduction in volume is attributable to planned egg set reductions implemented during the early stages of the COVID-19 pandemic to compensate for the decrease in demand from our food service customers.
>
> With respect to chicken production levels, the USDA's latest estimates forecast United States broiler production during calendar year 2021 to increase less than one percent compared to calendar year 2020. While egg sets have returned to pre-pandemic levels, lower hatchability rates have resulted in fewer chicks placed than egg set activity would suggest. We estimate our total production during the fourth quarter of fiscal 2021 will be lower by 3.1 percent compared to the fourth quarter of fiscal 2020. If that projection holds true, our total fiscal 2021 production will be

0.6 percent lower than our fiscal 2020 production.

**The Proposed Transaction**

31.     On August 9, 2021, Sanderson, Cargill, and CGC issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> MINNEAPOLIS and NEW YORK and LAUREL, Miss., Aug. 9, 2021 Cargill, Continental Grain Company, and Sanderson Farms, Inc. (NASDAQ: SAFM) announced today they have reached a definitive agreement for a joint venture between Cargill and Continental Grain to acquire Sanderson Farms for $203 per share in cash, representing a total equity value for Sanderson Farms of $4.53 billion. The purchase price represents a 30.3% premium to Sanderson Farms' unaffected share price of $155.74 on June 18, 2021, the last full trading day prior to media speculation about the potential sale of Sanderson Farms; a 22.8% premium to the Sanderson Farms 30-day volume weighted average price ("VWAP") as of June 18, 2021, and a 15.2% premium to the all-time high share price as of June 18, 2021. Upon completion of the transaction, Cargill and Continental Grain will combine Sanderson Farms with Wayne Farms, a subsidiary of Continental Grain, to form a new, privately held poultry business.
>
> The combination of Sanderson Farms and Wayne Farms will create a best-in-class U.S. poultry company with a high-quality asset base, complementary operating cultures, and an industry-leading management team and workforce.  The new company will be well positioned to enhance its service to customers across retail and food service and drive organic growth in an industry fueled by affordability and key consumer trends around the health, sustainability, and versatility of chicken.
>
> "Since my grandfather founded Sanderson Farms 75 years ago, our many significant achievements have been driven by our commitment to providing the very best chicken products in a profitable manner that benefits each of the constituents who contribute to our success.  This transaction is the culmination of that commitment, as it delivers a significant value to our stockholders, reflecting the dedication of our team, and our best-in-class assets, quality products, efficient and sustainable operations, and respected brand," said Joe Sanderson, Chairman and Chief Executive Officer of Sanderson Farms, Inc.  "We are proud to be joining with Cargill and Continental Grain and we are confident that they will be strong stewards of the Sanderson Farms team, brand and assets going forward.  As part of the newly created company, Sanderson Farms and its new owners will remain committed to the employees, poultry producers, customers, communities, environment, and animals under our care, and to continuing to deliver the highest quality products and the best service in our industry to our customers."

"We are very happy to partner with Cargill with whom we have had a decades-long relationship between two family-owned companies. Sanderson Farms' operations, best-in-class assets and valuable brand have underscored their success, and we have the highest respect for Joe Sanderson, and the business and team he has built as the third generation CEO," said Paul Fribourg, Chairman and CEO of Continental Grain. "Wayne Farms has been one of the most important and successful parts of Continental Grain for almost 60 years, so bringing together two great partners with two great poultry companies will ensure good things for our customers, our grower partners, and our employees."

The new company will have state-of-the-art operations and will continue to invest in its workforce and in employee safety. Operations will include poultry processing plants and prepared foods plants across Alabama, Arkansas, Georgia, Louisiana, Mississippi, North Carolina, and Texas.

"At Cargill, we are committed to nourishing the world in a safe, responsible and sustainable way," said David MacLennan, Chairman and CEO of Cargill. "Expanding our poultry offerings to the U.S. is a key enabler of our ability to meet customer and consumer demands. With these great businesses, and our strong partnership, we believe we will deliver a superior portfolio of products and services to our customers."

Cargill expects to support the new joint venture with its longstanding relationships with retail and foodservice customers. Wayne Farms, part of Continental Grain's food, agriculture and commodities investment portfolio since 1965, has roots in the poultry industry that go back more than a century.

PARTNERING WITH FARMERS AND COMMUNITIES

Cargill, Continental Grain, and Sanderson Farms are committed to ensuring operational excellence, workplace safety, and the highest quality of product for the U.S. poultry industry.

Cargill and Continental Grain have long histories of investing and partnering with American farmers and are dedicated to strengthening the food and agriculture industries for the benefit of consumers and growers. Their shared culture, built on the principles of supporting farmers and communities, complements Sanderson Farms' reputation as one of the industry's most respected operators. Sanderson Farms' strong brand, reputation, and best-in-class assets will remain a core part of the combined company. In addition, Wayne Farms' deep customer relationships across the food service sector complement Sanderson Farms' diverse grocery and retail relationships.

TRANSACTION DETAILS

The transaction is expected to close by the end of 2021 or early 2022, and will be subject to regulatory and Sanderson Farms stockholder approval, and other customary closing conditions.

The acquisition consortium has committed equity and debt financing in place to complete the transaction.

Wayne Farms CEO Clint Rivers will lead the combined company.

Upon the completion of the transaction, Sanderson Farms will become a private company, and its shares will no longer be traded on NASDAQ.

BofA Securities acted as the financial advisor to Cargill and Freshfields Bruckhaus Deringer (US) LLP acted as legal counsel. Gibson Dunn & Crutcher acted as tax counsel.

Centerview Partners LLC acted as financial advisor to Sanderson Farms and Wachtell Lipton Rosen & Katz and Fishman Haygood LLP acted as legal counsel.

Lazard acted as the financial advisor for Wayne Farms and Continental Grain, and Paul, Weiss, Rifkind, Wharton & Garrison LLP acted as legal counsel.

**Insiders' Interests in the Proposed Transaction**

32. Sanderson insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Sanderson.

33. Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Cargill and CGC. For example, Sanderson Secretary and Controller Tim Rigney is eligible to receive a cash transaction bonus equal to $174,972, conditioned upon the successful completion of the merger.

34. Moreover, the Merger Agreement provides that all outstanding restricted share awards will vest and convert into the right to receive the Merger Consideration. The value of the

restricted share awards held by non-employee directors that will vest upon completion of the merger on December 31, 2021 is $6,148,464.

35. Further, if they are terminated in connection with the Proposed Transaction, Sanderson insiders stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Named Executive Officer | Cash ($)(1) | Equity ($)(2) | Other ($)(3) | Total ($) |
|---|---|---|---|---|
| Joe F. Sanderson, Jr. | 10,101,627 | 28,064,750 | 20,764 | 38,187,141 |
| Lampkin Butts | 3,138,254 | 7,663,250 | 20,764 | 10,822,268 |
| Mike Cockrell | 2,516,177 | 6,039,250 | 20,764 | 8,576,191 |
| Tim Rigney | 592,963 | 1,451,450 | — | 2,044,413 |

**The Proxy Statement Contains Material Misstatements or Omissions**

36. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Sanderson's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

37. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Centerview; and (iii) Company insiders' potential conflicts of interest.

*Material Omissions Concerning the Company's Financial Projections*

38. The Proxy Statement omits material information regarding the Company's financial projections.

39. Specifically, the Proxy Statement sets forth that at a March 30, 2021 Board meeting "[m]embers of management also presented an updated version of the Sanderson Farms' five-year financial forecast model to the Board of Directors and discussed key assumptions underlying such

model." Proxy Statement at 30. Thereafter, at a July 22, 2021 Board meeting, "[m]embers of management also presented an updated version of Sanderson Farms' five-year financial forecast model to the Board of Directors and discussed key assumptions underlying such model." *Id.* At 33. The Proxy Statement, however, fails to disclose the five-year financial forecast model prepared by Company management and presented to the Board on March 30, 2021, as well as the key assumptions underlying each of the models presented to the Board on March 30, 2021 and July 22, 2021.

40. Additionally, the Proxy Statement fails to disclose all line items underlying the calculation of EBITDA, NOPAT and Unlevered Free Cash Flow.

41. The omission of this material information renders the statements in the "Management Projections" and "Background of the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Centerview's Financial Analyses*

42. The Proxy Statement omits material information regarding Centerview's financial analyses.

43. The Proxy Statement describes Centerview's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Sanderson's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

44. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the forecasted terminal year EBITDA used to calculate the terminal value for the Company; (ii) quantification of the range of terminal values for Sanderson; (iii) the Company's estimated net cash at July 31, 2021; (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 7.5% to 8.5%; and (v) the total number of fully diluted outstanding shares as of July 31, 2021 (excluding the Company Performance Share Awards).

45. With respect to Centerview's *Analyst Price Target Analysis*, the Proxy Statement fails to disclose: (i) the price targets observed by Centerview in the analysis; and (ii) the sources thereof.

46. Without such undisclosed information, Sanderson stockholders cannot evaluate for themselves whether the financial analyses performed by Centerview were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Centerview's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

47. The omission of this material information renders the statements in the "Opinion of Centerview Partners LLC" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

48. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

49. For example, according to the Proxy Statement, on August 7 and August 8, 2021, "[r]epresentatives of Wachtell Lipton provided a summary of the proposed employment and compensation arrangements between certain members of management and the Bidder Group following the consummation of the proposed transaction[.]" *Id* at 34. The Proxy Statement fails, however, to disclose the details of these proposed arrangements. The Proxy Statement similarly fails to disclose whether any of Sanderson's executive officers and directors have secured employment with the combined company as well as the specific details of any employment and retention-related discussions and negotiations that occurred between CGC and Cargill and Sanderson's executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of CGC's and Cargill's proposals or indications of interest mentioned management retention, consulting arrangements or equity participation in the combined company.

50. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

51. The omission of this material information renders the statements in the "Background of the Merger" and "Interests of Sanderson Farms' Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

52. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this

information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Sanderson will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

### CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

53. Plaintiff repeats all previous allegations as if set forth in full.

54. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

55. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, Centerview's financial analyses and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

56. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

57. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

58. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

59. Plaintiff repeats all previous allegations as if set forth in full.

60. The Individual Defendants acted as controlling persons of Sanderson within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Sanderson, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

61. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

63. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

64. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Sanderson stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Sanderson, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Sanderson stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 4, 2021                  **WEISSLAW LLP**

By /s/ Richard A. Acocelli
Richard A. Acocelli
305 Broadway, 7th Floor
New York, New York 10007
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*